**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HOWARD BURNS, | CASE NO. 1:14-cv-01925-YK-GBC |
| Plaintiff, | (JUDGE KANE) |
| v. | (MAGISTRATE JUDGE COHN) |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMISSIONER AND REMAND FOR FURTHER PROCEEDINGS |
| Defendant. | |
| | Docs. 1, 8, 9, 11, 14 |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Howard Burns for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"). Plaintiff injured his spine in 1987 and underwent surgery. He returned to the workforce for almost twenty-five years. He stopped working in 2011 and exhibited worsening degenerative disc disease, dextroscoliosis, and other impairments. Both medical opinions in the record, one from a treating source and one from the state agency, indicated that Plaintiff was unable to sit or stand sufficiently to perform work in

the national economy. No medical opinion supported the ALJ's determination that Plaintiff was able to perform work in the national economy.

Courts review denial of benefits under the Act using the deferential substantial evidence standard. *See Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). The Court must affirm the ALJ's denial if "a reasonable mind might accept [the relevant evidence] as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In a slew of decisions, the Third Circuit holds that no reasonable mind would find the ALJ's evidence to be adequate when the ALJ rejects every medical opinion in the record with only lay reinterpretation of medical evidence. *See Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 29-30 (3d Cir. 1986); *Ferguson v. Schweiker*, 765 F.2d 31, 37, 36-37 (3d Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir.1983); *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano*, 602 F.2d 55, 58-59, (3d Cir. 1979); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979); *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978). These cases also recognize the special deference owed to medical opinions from treating sources ("treating source rule"). *Id.* No subsequent

binding precedential Third Circuit decision or enactment overrules these cases. These cases remain binding precedent.

In *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991); *Plummer v. Apfel*, 186 F.3d 422, 430 (3d Cir. 1999); and *Brown v. Astrue*, 649 F.3d 193, 194 (3d Cir. 2011), the Third Circuit affirmed an ALJ who rejected a treating source medical opinion when two or more medical opinions supported the ALJ's determination that the claimant was not disabled. *Id.* Consequently, these cases do not address whether an ALJ's lay reinterpretation of medical evidence, alone, supplies substantial evidence to find that a claimant is not disabled when all of the medical opinions indicate that the claimant is disabled. *Id.* In *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011), the Third Circuit affirmed an ALJ who relied on an uncontradicted state agency opinion that the claimant was not disabled. *Id.* at 361-63. The only precedential holding in *Chandler* is the unremarkable finding that an ALJ may rely on a state agency medical opinion that the claimant is not disabled when there are no medical opinions from treating sources that the claimant is disabled. *Id.* Consequently, *Chandler* addresses neither the treating source rule nor the standard an ALJ must use to reject, rather than accept, medical opinions. *Id.*

When binding precedent squarely addresses an issue, the District Court may not deviate from that precedent based on dicta. *See Bd. of Trustees of Bricklayers*

*& Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.*, 237 F.3d 270, 275 (3d Cir. 2001) ("To the extent it applied dicta…the District Court erred"). Here, *Frankenfield*, *Doak*, *Ferguson*, *Kent, Van Horn, Kelly, Rossi, Fowler* and *Gober* squarely address whether an ALJ's lay reinterpretation of medical evidence, alone, constitutes substantial evidence to reject a treating source medical opinion. *Jones*, *Plummer*, *Brown*, and *Chandler* do not address this issue. Consequently, the District Court must follow *Frankenfield*, *Doak*, *Ferguson*, *Kent, Van Horn, Kelly, Rossi, Fowler* and *Gober* regardless of dicta statements in *Jones*, *Plummer*, *Brown* and *Chandler*.

The ALJ rejected two medical opinions, one from the state agency and one from a treating source, based only on lay interpretation of medical evidence. Each medical opinion indicated disabling limitations. No medical opinion supported the ALJ's assessment.  The ALJ lacked substantial evidence to reject these opinions and deny benefits under the Act. The Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings.

## II.    Procedural Background

On December 7, 2011, Plaintiff filed an application for SSI under the Act. (Tr. 143-48). On February 3, 2012, the Bureau of Disability Determination denied Plaintiff's application (Tr. 61-70), and Plaintiff filed a request for a hearing on

March 9, 2012.  (Tr. 79-81). On March 7, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—appeared and testified. (Tr. 36-60).  On May 6, 2013, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 16-33). On May 20, 2013, Plaintiff filed a request for review with the Appeals Council (Tr. 13-15), which the Appeals Council denied on August 7, 2014, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5).

On October 3, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On December 9, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 8, 9). On January 26, 2015, Plaintiff filed a brief in support of his appeal ("Pl. Brief"). (Doc. 11). On March 30, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 14). Plaintiff did not file a brief in reply. On June 29, 2015, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520.   The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also

determine Plaintiff's residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

### IV. Relevant Facts in the Record

Plaintiff was born on April 14, 1967, and was classified by the regulations as a younger individual through the date of the ALJ decision. 20 C.F.R. § 404.1563. (Tr. 28). Plaintiff has at least a high school education. (Tr. 28). In 1987, Plaintiff injured his back and underwent spinal fusion surgery. (Tr. 46). He was able to return to work. (Tr. 46-47). The relevant period begins on November 27, 2011, the application date. (Tr. 21).

On November 4, 2011, Plaintiff presented to the emergency room complaining of chest and epigastric pain. (Tr. 245-61, 339). He was anxious, in mild distress, and "appear[ed] to be in pain." (Tr. 329). Examination indicated abdominal tenderness. (Tr. 339).   Abdominal CT scan showed "chronic L1

compression," a urinary calculus, "deformity of the left iliac bone ischium, and pubis consistent with old healed fractures," and that the screws holding a plate at the site of the fracture had broken. (Tr. 263, 329, 336-37). Providers diagnosed Plaintiff with renal colic and ureterolithiasis and instructed him to follow-up with his primary care physician, Dr. DeWitt, and an urologist. (Tr. 335). He was prescribed Flomax, ibuprofen, and Percocet with no refills. (Tr. 326).

On November 6, 2011, Plaintiff returned to the emergency room complaining of continued pain and vomiting. (Tr. 240-51, 316). Examination indicated abdominal tenderness and moderate obesity. (Tr. 243, 317). Abdominal CT scan noted "degenerative change at the sacroiliac joint." (Tr. 251). Diagnosis remained right renal colic. (Tr. 321). Plaintiff received pain medication, improved, and was discharged. (Tr. 323).

On November 8, 2011, Plaintiff followed-up with Dr. DeWitt. (Tr. 267). Dr. DeWitt's treatment records are handwritten and largely illegible (Tr. 267, 356-63). Dr. Dewitt prescribed thirty Percocet. (Tr. 267).

On December 12, 2011, Plaintiff presented to the emergency room for kidney stones. (Tr. 275-77, 303). He reported "chronic back pain," headache, chills, eye pain, neck pain, back pain, hip pain, shoulder pain, numbness, and trouble sleeping. (Tr. 303-05). Lumbar spine X-ray indicated "[p]revious surgery secondary to compression fracture deformity of L1" with a "left renal calculus"

and that "[t]he lower screws securing the side plate have fractured." (Tr. 270, 273, 300). Plaintiff had "disc space height loss" and "mild endplate spondylosis." (Tr. 368). Plaintiff had "possibly a bone harvesting at the left ileum." (Tr. 269, 272, 353-54, 368). Testing indicated that the deformity of the left iliac crest was "probably relating to a prior bone graft donor site" and the "deformity of the left pubic ramus" was "likely posttraumatic." (Tr. 283).   Later that day, Plaintiff followed-up with Dr. DeWitt. (Tr. 267). Dr. Dewitt prescribed thirty Percocet "7.5/325." (Tr. 267). On December 20, 2011, Plaintiff underwent uretral surgery. (Tr. 278-80, 310).

On December 13, 2011, Plaintiff submitted a Function Report in support of his claim for benefits. (Tr. 197). He reported that he was unable to work due to "back pain all the time." (Tr. 190, 198-99). He denied medication side effects. (Tr. 197). He indicated problems with concentration, lifting, squatting, bending, reaching, sitting, kneeling, and climbing stairs. (Tr. 195). He reported that he could not sit for more than an hour at a time. (Tr. 194). He reported that he did not spend time with others or go places on a regular basis, aside from shopping for one hour twice a week. (Tr. 193). He admitted he left his home daily and could walk, drive, and ride in a car. (Tr. 193). He reported that he spent thirty minutes a day cooking meals, performed cleaning, sweeping, and mopping for two to three hours twice a

week, and did yard work once a week. (Tr. 192). He reported no problems with personal care, but problems sleeping. (Tr. 191).

Plaintiff followed-up with Dr. DeWitt in January and February of 2012. (Tr. 362). Dr. DeWitt increased Plaintiff's narcotic dosage to sixty Percocet "7.5/325" per month. (Tr. 362).

On January 25, 2012, Plaintiff underwent a consultative examination with state agency physician Dr. Lawrence Stepczak, M.D. (Tr. 297). Plaintiff exhibited "some problems with lying flat," "some tenderness in the upper lumbar spine to palpation," and decreased range of motion in the lumbar spine, hip, cervical spine, shoulder, and knee. (Tr. 288-89, 298). Dr. Stepczak noted his history of spine surgery. (Tr. 297). Dr. Stepczak also reviewed Plaintiff's X-ray showing that the screws securing the side plate had fractured.   (Tr. 297, 300). He opined that Plaintiff could lift up to ten pounds, but could stand and walk for one hour or less, sit for only two hours, never climb, and only occasionally bend, kneel, stoop, crouch, and balance. (Tr. 284-87).

On March 9, 2012, thoracic spine X-ray indicated the "lower screws securing the side plate [had] fractured." (Tr. 365). There was no "significant degenerative change" in the thoracic spine. (Tr. 365). X-ray of the right shoulder and cervical spine were normal. (Tr. 365-67).

In March and April of 2012, Plaintiff followed-up with Dr. DeWitt. (Tr. 361). Dr. Dewitt increased his medication to ninety Percocet "7.5/325" per month. (Tr. 361). On May 8, 2012, Dr. DeWitt increased his medication to one hundred Percocet at a higher dose, "10/325," per month. (Tr. 360).

On May 9, 2012, Dr. DeWitt authored a medical opinion. (Tr. 373). He indicated that he had seen Plaintiff monthly since December of 2010. (Tr. 369). He opined his impairments had existed since November of 2011. (Tr. 373). He indicated that Plaintiff's diagnoses were degenerative disc disease of the cervical spine and left shoulder bursitis. (Tr. 369). He indicated that Plaintiff had pain, decreased range of motion, and neuropathy. (Tr. 369). He opined that Plaintiff could stand and/or walk for "0-2" hours and sit for "0-2" hours. (Tr. 370). He indicated that Plaintiff needed an assistive device to ambulate and that he had "significant limitations in doing repetitive reaching, handling, fingering, or lifting." (Tr. 370). He opined that Plaintiff would not be able to do a "full time competitive job" that required him to "keep the neck in a constant position." (Tr. 371). He opined Plaintiff would be absent from work more than three days per week and was incapable of low-stress work due to pain. (Tr. 371-73).

Plaintiff followed-up with Dr. DeWitt in June, July, August, September, October, November, and December of 2012. (Tr. 356-360). In June, July, August, and September of 2012, Dr. DeWitt continued prescribing one hundred Percocet

"10/325." (Tr. 360). By November of 2012, he was prescribing one hundred twenty-five Percocet "10/325." (Tr. 357).

On January 4, 2013, a lumbar spine X-ray indicated that Plaintiff's sideplate was "keeping L1 fracture in good alignment." (Tr. 374). Plaintiff had "a dextroscoliosis of the lumbar spine." (Tr. 374). He was assessed to have "scoliosis with scattered degenerative changes." (Tr. 375).

Plaintiff appeared and testified before an ALJ on March 7, 2013. (Tr. 36-60). He testified that he was forty-five years old and lived with his girlfriend and her three teenage children. (Tr. 43). He testified he was right handed. (Tr. 43). He testified that he drove to the hearing, but his back began hurting after thirty minutes. (Tr. 43). He testified that initially, he had "good result[s]" from his 1987 surgery, but his back pain returned over time. (Tr. 46-47). He testified that he was "let go" from his last job when he could not perform quickly enough secondary to back pain. (Tr. 44). He testified that Dr. Dewitt indicated surgery would not necessarily help him, and could harm him. (Tr. 48). He testified he was taking oxycodone once every four hours and two muscle relaxers. (Tr. 48). He testified that Dr. Dewitt had escalated his oxycodone dosage over time. (Tr. 49). He testified that one of his muscle relaxers made him groggy. (Tr. 49). He testified that he used a cane, prescribed in January or February of 2012, "off and on." (Tr. 50). He testified that he spent most of his day laying in bed "because it hurts to get

up." (Tr. 51). He testified to pain in his groin, neck and right side with certain movements or climbing a flight of stairs. (Tr. 51). He testified that he did "very little" chores around the house and no yard work. (Tr. 52). He testified his girlfriend accompanied him if he went walking. (Tr. 52). He testified that he could no longer do any leisure activities. (Tr. 52). He testified that he could typically sit or stand for no more than forty minutes at a time and walk no more than two blocks. (Tr. 53-54). He testified that he can concentrate for twenty minutes, needs to lean on a cart when he goes shopping, and has difficulty dressing himself. (Tr. 58).The ALJ did not elicit testimony from a VE present at the hearing. (Tr. 36-60).

On May 6, 2013, the ALJ issued the decision. (Tr. 29). The ALJ found that Plaintiff's old healed compression fracture at Ll, mild scoliosis with scattered degenerative changes, and recurrent kidney stones restricted Plaintiff to a full range of sedentary work, lifting and/or carrying up to ten pounds, standing and/or walking for a total of two hours a day, and sitting for a total of six hours per day. (Tr. 21-23). The ALJ found that Plaintiff's "neck pain, left hip pain, degenerative joint disease of the cervical spine, bursitis of the shoulder, neuropathy, depression" were "either non-severe or not medically determinable" because there was "no medical evidence to support the existence of any significant limitations" due to these impairments. (Tr. 22). The ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 23). At step four, the ALJ found that Plaintiff could not perform his

past relevant work (Tr. 27).[1] At step five, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 28). Consequently, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 28).

## V.    Plaintiff Allegations of Error

### A. Lay reinterpretation of medical evidence, alone, cannot rebut competent medical opinions from treating professionals

In the Third Circuit, an ALJ may not reject a supported treating source medical opinion with only lay interpretation of medical evidence. *See Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988) (Commissioner could not reject medical opinions "simply by having the administrative law judge make a different medical judgment"); *Doak v. Heckler*, 790 F.2d 26, 29-30 (3d Cir. 1986) ("[n]o physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence"); *Ferguson v. Schweiker*, 765 F.2d 31, 37, 36-37 (3d Cir. 1985); *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983) ("the ALJ's conclusion that appellant is capable of engaging in sedentary activity is merely a function of the ALJ's own medical judgment. As such, his conclusion may not be permitted to stand, for we have

---

[1] There is no evidence in the record regarding Plaintiff's past relevant work. At the initial state agency level, no analysis was undertaken regarding past relevant work because the state agency also denied Plaintiff's application using the Grid rule. (Tr. 69). The ALJ did not elicit any VE testimony. (Tr. 36-60). Thus, it is unclear how the ALJ made this finding.

pointed out time and again that these kinds of judgments are not within the ambit of the ALJ's expertise"); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir.1983); *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 494 (3d Cir. 1980) ("[a]n administrative law judge may not reject professional medical evidence on the basis of his own observation"); *Rossi v. Califano*, 602 F.2d 55, 58-59, (3d Cir. 1979) (ALJ's opinion was "not supported by any medical opinion in this case… an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence."); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979) ("[w]e have examined the record for an expert medical opinion that Mrs. Rossi was capable of working…There is none"); *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978).  ALJs must also give special deference to medical opinions from treating physicians and require good reasons to reject them in favor of evidence from non-treating sources ("treating source rule"). *Id*.

In *Ferguson*, the Third Circuit held that merely citing to contradictory medical evidence, as opposed to contradictory medical opinion, is insufficient. *Ferguson*, 765 F.2d at 37. There, a physician opined that Plaintiff was disabled "based on laboratory reports contained in the record." *Id*. at 36. The ALJ found that the claimant was not disabled because her records had "not resulted in end-organ damage and is controlled adequately by medication," objective evidence indicated only "non-specific EKG findings" and "'mild' arthritis," her onychomycosis

(fungal infections causing a foul odor in her hands) was not "vocationally significant," and she had not treated certain problems with a specialist. *Id*. at 35. The Court held that:

> [T[he ALJ acted improperly in discrediting the opinions of [the treating physician] by finding them contrary to the objective medical evidence contained in the file. By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence. Again, if the ALJ believed that [the physician's] reports were conclusory or unclear, it was incumbent upon the ALJ to secure additional evidence from another physician.

*Id.* at 37.

Since *Frankenfield* was decided in 1988, the Third Circuit has only affirmed an ALJ who rejects a treating source medical opinion when there are two or more medical opinions that the claimant is not disabled. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991); *Plummer v. Apfel*, 186 F.3d 422, 430 (3d Cir. 1999); *Brown v. Astrue*, 649 F.3d 193, 194 (3d Cir. 2011). There is a critical difference between an ALJ who resolves a conflict in medical opinions and an ALJ who rejects all of the medical opinions in favor of lay interpretation. *See Gober,* 574 F.2d at 777 ("[w]hile an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him"). When two or more medical opinions support the ALJ's

decision, the ALJ is not required to undertake lay interpretation of medical evidence in order to reject a medical expert opinion. *Id.* Moreover, in *Plummer*, the treating physician rule was not implicated, because the ALJ did not credit non-treating evidence over treating evidence. *Plummer*, 186 F.3d at 430 (ALJ accepted opinions by "several other treating physician[s]" over opinion of another treating physician). Consequently, determining the validity of lay interpretation of medical evidence was not a necessary issue in *Jones*, *Plummer*, *Brown*, *or Chandler*.

Defendant frequently relies on *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011). However, in *Chandler*, there was only one medical opinion, from a state agency physician, and the opinion indicated that the claimant was not disabled. *Id.* at 361-63. No treating source opinions or medical opinions that the claimant was disabled existed in the record. *Id.* at 360 (Claimant's treating physician opinions could not "be considered by the District Court in making its substantial evidence review" because they were not timely filed before the ALJ). The ALJ accepted the state agency opinion, and did not reject any opinion. *Id.* at 361-63. The only precedential holding in *Chandler* is the unremarkable finding that an ALJ may rely on a state agency medical opinion that the claimant is not disabled when there are no medical opinions from treating sources that the claimant is disabled. *Id.* Consequently, *Chandler* addresses neither the treating

source rule nor the standard an ALJ must use to reject, rather than accept, medical opinions.

At most, *Chandler* addresses whether, if there are no medical opinions in the record whatsoever, an ALJ must obtain a medical opinion. *Id.* Even with regard to this question, *Chandler* does not cite Regulations that speak directly to the issue. *Chandler* found that that "the regulations do not require ALJs to seek outside expert assistance, *see* 20 C.F.R. §§ 404.1546(c), 404.1527(e)." *Chandler*, 667 F.3d at 362. However, 20 C.F.R. §404.1546(c) merely identifies which employee within the Social Security Administration assesses the RFC at each procedural stage, and provides that "the administrative law judge," as opposed to delegates of the Office of Disability Determinations, "is responsible for assessing [claimants'] residual functional capacity" at the ALJ stage. 20 C.F.R. §404.1546(b)-(c).[2]  *Chandler*'s citation to 20 C.F.R. §404.1527(e) is a citation to the current 20 C.F.R. §404.1527(d). *See* How We Collect and Consider Evidence of Disability, 77 FR

---

[2] *Chandler* also quotes 20 C.F.R. §404.1527(e)(1)(i) for the premise that "RFC findings of non-examining State agency consultants are 'based on the evidence ... but are not in themselves evidence.'" *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (quoting 20 C.F.R. §404.1527(f)(1), "[r]edesignated as subsection (e) by 77 FR 10656." 20 C.F.R. § 404.1527(f)). However, this provision only applies to "the level of the administrative review process at which they are made." 20 C.F.R. § 404.1527(e)(1)(i). Consequently, this provision does not apply to determinations by an ALJ. *See* 20 C.F.R. § 404.1527(e)(2)(i) ("[A]dministrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence").

10651-01 ("Redesignat[ing] paragraphs (d) through (f) as (c) through (e)"). The provisions of 20 C.F.R. §404.1527(d) do not apply to medical opinions. These provisions address statements on issues reserved to the Commissioner. *Id.* Statements on issues reserved to the Commissioner are excluded from the definition of "medical opinion." *See* 20 C.F.R. § 404.1527(d) ("Medical source opinions on issues reserved to the Commissioner…are not medical opinions, as described in paragraph (a)(2) of this section").

Moreover, Congress subsequently amended the Act to require medical expert review of the medical evidence for any claimant who establishes any medically determinable impairment. *See* BIPARTISAN BUDGET ACT OF 2015, PL 114-74, November 2, 2015, 129 Stat 584, §832(a). This change is particularly notable given the context of the other amendments to the Act, which were generally designed to save costs for the Administration.[3] This amendment recognizes that medical evidence requires review by an individual with medical training, rather than lay interpretation. *See also North Haven Board of Education v. Bell,* 456 U.S. 512, 535 (1982) ("Although postenactment developments cannot be accorded 'the weight of contemporary legislative history, we would be remiss if we

---

[3] Subtitle A, entitled "Ensuring Correct Payments and Reducing Fraud," expands fraud investigation units nationwide, prohibits the Commissioner from considering evidence from medical providers who have been convicted of certain crimes, creates "new and stronger penalties" for Social Security fraud, and requires electronic payroll data to improve efficient administration. *Id.* §§811-831.

ignored these authoritative expressions") (quoting *Cannon v. Univ. of Chi.,* 441 U.S. 677, 686 n. 7, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)); *INS v. Cardoza–Fonseca,* 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

*Chandler* cited other Regulations that purportedly provide that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler*, 667 F.3d at 361 (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir.2011)) (citing 20 C.F.R. §404.1527(d)(1)-(2) (redesignated as 20 C.F.R. §404.1527(c)(1)-(2) by 77 FR 10651-01)). However, 20 C.F.R. §404.1527(c) retains, rather than abrogates, the common law that an ALJ's lay reinterpretation of medical evidence is insufficient to reject a treating source medical opinion. Consequently, a supported treating source medical opinion that is contradicted only by lay reinterpretation of medical evidence does bind the ALJ on the issue of functional capacity.

In 1991, after *Frankenfield* was decided, the Social Security Administration amended the Regulations regarding medical opinion evidence and enacted 20 C.F.R §404.1527(c). *See* 56 FR 36932-01. Regulatory enactments are presumed to retain, rather than abrogate, existing common law. *See United States v. Texas,* 507 U.S. 529, 534 (1993). Enactments "which invade the common law ... are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident" and "[i]n

order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *Id.* (internal citations omitted).  "[W]hen 'the words of a statute are unambiguous,'" then the presumption is overcome. *Sebelius v. Cloer*, 133 S. Ct. 1886, 1896 (2013) (quoting *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253–254 (1992)).   If the text of the provision is "compatible with preexisting practice," the statute is not sufficiently unambiguous to overcome the presumption. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543 (1994) (internal citations omitted). The party asserting that the enactment abrogates common law bears the burden of overcoming this presumption. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521 (1989) (internal citations omitted).

Here, Defendant has not alleged that the 1991 enactment of 20 C.F.R. §404.1527(c) abrogated *Frankenfield*, *Doak*, *Ferguson*, *Kent, Van Horn, Kelly, Rossi, Fowler* and *Gober.*   (Def. Brief). Consequently, Defendant has not met her burden to overcome the presumption that *Frankenfield*, *Doak*, *Ferguson*, *Kent, Van Horn, Kelly, Rossi, Fowler* and *Gober* were retained. *See Bock Laundry Mach. Co.*, 490 U.S. at 521 (1989).

An independent review of the 1991 amendments enacting 20 C.F.R. §404.1527(c) indicates that they do not "speak directly" to whether an ALJ may reject a treating source opinion with lay interpretation of medical evidence and are not incompatible with the preexisting practice in *Frankenfield*, *Doak*, *Ferguson*,

*Kent, Van Horn, Kelly, Rossi, Fowler* and *Gober*. Turning first to the language of the enactment, the 1991 Amendments established that some treating medical opinions are controlling ("controlling weight provision"), *see* 20 C.F.R. §404.1527(c)(2); SSR 96-5p. In contrast, the Regulations explicitly provide that medical opinions from non-treating physicians and statements from treating providers on issues reserved to the Commissioner do not bind the ALJ. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled'[4] or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 404.1527(e)(2)(i) ("Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists"). These provisions would be superfluous if no treating medical opinion binds the ALJ. *Id.* The Court may not interpret "any statutory provision in a manner that would render another provision superfluous." *Bilski v. Kappos*, 561 U.S. 593, 607-08 (2010) (internal citations omitted).

Specifically, if "a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

---

[4] Medical opinions may effectively function as "findings that are dispositive of a case" if they indicate medical limitations likely to be incompatible with performing work. 20 C.F.R. § 404.1527(d). However, this does not mean that they are statements on issues reserved to the Commissioner, because they must still be paired with vocational, age, and education evidence prior to making the administrative finding. *Id.*

substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-5p ("Although the overall RFC assessment is an administrative finding on an issue reserved to the Commissioner, the adjudicator must nevertheless adopt in that assessment any treating source medical opinion…to which the adjudicator has given controlling weight"). The Social Security Administration ("Administration") "changed the term 'fully supported' to 'well-supported' because" the Administration:

> [A]greed with commenters who pointed out that 'fully supported' was unclear and that, more important, it was an impractically high standard which, even if it were attainable, would essentially make any opinion superfluous. We believe that the new term, 'well-supported,' is more practicable and more reasonable; it should make clear that we will adopt opinions that are well-supported by medically acceptable clinical and laboratory diagnostic techniques unless they are inconsistent with substantial evidence in the record.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936.

The Regulations do not define "inconsistent…substantial evidence." 20 C.F.R. § 404.1527(c)(2). Legislative history from Administration indicates that, in "extremely rare occurrences," the ALJ may reject a medical opinion based on "non-medical evidence," like activities of daily living, that are "inconsistent with the opinion." Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936. This does not address whether lay reinterpretation of medical evidence constitutes "inconsistent…substantial

evidence." 20 C.F.R. § 404.1527(c)(2). *Frankenfield*, *Doak*, *Ferguson*, *Kent, Van Horn, Kelly, Rossi, Fowler* and *Gober* define the substantial evidence needed to contradict a competent treating source opinion, and hold that lay interpretation of medical evidence as insufficient. *Supra*. Consequently, the controlling weight provision is "compatible with preexisting practice," and is not sufficiently unambiguous to overcome the presumption of retention. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543 (1994) (internal citations omitted).

The controlling weight provision must be read *in pari materia* with related Regulations. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 315-16 (2006) ("[U]nder the *in pari materia* canon of statutory construction, statutes addressing the same subject matter generally should be read as if they were one law) (internal citations and quotations omitted). Section 404.1519a unambiguously requires the ALJ to obtain medical opinion evidence if there is an "inconsistency in the evidence" that needs to be resolved. *Id.* When the only medical opinions are from a treating source, entitled to special deference, and indicate that the claimant is disabled, there is an inconsistency that needs to be resolved before the ALJ can find that the claimant is not disabled.  *Id.* Similarly, the Regulations preclude an ALJ from concluding that a treating medical opinion is "unsupported" without recontacting the treating physician:

> Some commenters were concerned that the proposed language of §§ 404.1527(b) and (c), and 416.927(b) and (c) permitted us to discount a

treating source's apparently unsupported opinion without recontacting the source, and that the rules placed highly restrictive conditions on obtaining additional information from treating sources.

Response: To the contrary, recontact with treating sources to complete the case record and to resolve any inconsistencies in the evidence is one of the principal provisions of this set of rules…far from being restrictive, the intent of these rules is to require such contacts.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01, 36951-36952; *see also* SSR 96-5p ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."). Thus, simply reinterpreting medical evidence to reject a treating source opinion without attempting to recontact the treating source opinion violates the ALJ's duty to develop the record. *Id.*

There is no evident "statutory purpose" to abrogate common law. *United States v. Texas,* 507 U.S. 529, 534 (1993). The Social Security Administration specifically explained that the 1991 Amendments were intended to adopt general trends in the common law. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36934 ("[T]he majority of the circuit courts generally… agree that treating source evidence tends to have a special intrinsic value by virtue of the treating source's relationship with the

claimant…[and] if the Secretary decides to reject such an opinion, he should provide the claimant with good reasons for doing so. We have been guided by these principles in our development of the final rule"); *see also Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 823, 123 S. Ct. 1965, 1966, 155 L. Ed. 2d 1034 (2003) ("The treating physician rule…was originally developed by Courts of Appeals…In 1991, the Commissioner of Social Security adopted regulations approving and formalizing use of the rule in the Social Security disability program"). The Social Security Administration also acknowledged that:

> In the preamble to the Notice of Proposed Rulemaking, we noted that the Senate Finance Committee had indicated in its report on Public Law 98-460 (S. Rep. No. 98-466, 98th Cong., 2d Sess., 26 (1984)), that it did not intend to alter in any way the relative weight that the Secretary places on reports received from treating physicians and from physicians who perform consultative examinations.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36934. Consequently, there is no clear purpose to abrogate existing common law. *See Texas,* 507 U.S. at 534.

Retaining the common law furthers the multiple purposes of the Social Security Act. First, the Act is "unusually protective" to claimants. *Heckler v. Day*, 467 U.S. 104, 106, 104 S. Ct. 2249, 2251, 81 L. Ed. 2d 88 (1984). Second, "[t]he disability programs administered under Titles II and XVI "are of a size and extent difficult to comprehend." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971)).  "Accepting and codifying" clear-cut

rules "serve[s] the need for efficient administration of an obligatory nationwide benefits program." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 823, 123 S. Ct. 1965, 1966, 155 L. Ed. 2d 1034 (2003). The "massive unexplained differences in the rate at which ALJs grant or deny benefits" heightens the need for the Courts to articulate clear rules. Harold J. Krent & Scott Morris, *Inconsistency and Angst in District Court Resolution of Social Security Disability Appeals* 12 (Chi.-Kent Coll. of Law, Research Paper No. 2014-30, 2014), *available at* http://papers.ssrn.com/sol3/papers.cfm? abstract_id=2530158.

The Court notes that an agency's "fair and considered" interpretation of a regulation is entitled to deference. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-21667 (2012) (internal citations omitted). However, deference to an agency's interpretation is inappropriate when the agency's interpretation "does not reflect the agency's fair and considered judgment on the matter in question," such as when "the agency's interpretation conflicts with a prior interpretation…or when it appears that the interpretation is nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack." *Id*.

The Social Security Administration has multiple mechanisms to communicate fair and considered judgment on a matter, such as Social Security Rulings, Acquiescence Rulings, or regulations. *See* 20 C.F.R. § 402.35(b)(1)

("Social Security Rulings…are binding on all components of the Social Security Administration."); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287 (3d Cir. 2012) (citing 20 C.F.R. § 404.985(b) (SSA will issue an Acquiescence Ruling when it "determine[s] that a United States Court of Appeals holding conflicts with [the SSA's] interpretation of a provision of the Social Security Act or regulations")).

Other Circuits have concluded that an ALJ is still prohibited from rejecting medical expert opinions with lay interpretation of medical evidence. In *Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998) (" In the absence of a medical opinion to support the ALJ's finding as to Balsamo's ability to perform sedentary work, it is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.'") (Reversing and awarding benefits) (internal citations omitted); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009) ("An ALJ's conjecture is never a permitted basis for ignoring a treating physician's views") (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ erred when he "independently evaluated the evidence in this case and improperly substituted his judgment for that of" a treating physician)); *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th

Cir. 2004) ( "the ALJ appears to have rejected Dr. Baca's opinion based upon his own speculative lay opinion that claimant failed to comply with prescribed treatment, an improper basis to reject the treating physician's opinion") (citing *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports" and may not reject based on "lay opinion")); *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *Harbor v. Apfel*, 242 F.3d 375 (8th Cir. 2000) (citing *Pratt v. Sullivan*, 956 F.2d 830, 834 (8th Cir.1992) (per curiam) (ALJ cannot substitute his lay opinion for that of examining and treating professionals)); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("The Commissioner suggests that despite Dr. Mahoney's opinion, the medical record supported the ALJ's determination that claimant was fully capable of performing sedentary work. As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination.") (internal citations omitted); *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995) (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor…Common sense can mislead; lay intuitions about medical phenomena are often wrong.")).

Since the 1991 Amendments, the Third Circuit has held that an ALJ may not undertake lay interpretation of medical evidence to reject a treating source, even when a medical opinion supports the ALJ decision. *See Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000); *Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009) (ALJ improperly independently reviewed longitudinal treatment record to reject opinions by treating and examining physicians in favor of a non-examining opinion); *cf. Dority v. Comm'r Soc. Sec.*, No. 14-3500, 2015 WL 4624166, at *2 (3d Cir. Aug. 4, 2015) (Recognizing rule that ALJ may not improperly substitute lay opinion for the opinion of experts, but noting that this rule was not implicated, because ALJ "relied heavily" on expert testimony). In *Morales*, the ALJ rejected a medical opinion that the claimant was disabled based on "personal observations of [the claimant] at the administrative hearing…evidence in the record of malingering, and notations in… treatment notes that [the claimant] was stable and well controlled with medication." *Morales*, 225 F.3d at 317. A non-treating, non-examining physician opined that the claimant was not disabled. *Id.* at 317. However, the Third Circuit reversed the ALJ's decision, explaining that the ALJ could not "disregard [the treating] medical opinion based solely on his own amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility." *Id.* at 318 (internal citations omitted). The Third Circuit

explained that the ALJ relied on "pieces of the examination reports that supported this determination," but "[t]he Commissioner cannot reject [the treating source's] medical opinion simply by having the ALJ make a different medical judgment." *Id. Morales* affirms the rationale of *Frankenfield*, *Doak*, *Ferguson*, *Kent, Van Horn, Kelly, Rossi, Fowler* and *Gober*: an ALJ may not reject a supported medical opinion based on the ALJ's lay evaluation of medical evidence.

The SSA has not issued any acquiescence rulings indicating that any of the above-described decisions from the Court of Appeals "conflicts with [its] interpretation of a provision of the Social Security Act or regulations." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 301 (3d Cir. 2012). The SSA also has not amended the Regulations or issued any Social Security Rulings to correct the above-described decisions of the Court of Appeals. *See United States v. Amirnazmi*, 645 F.3d 564, 587 (3d Cir. 2011). Consequently, the undersigned concludes that any argument by Defendant that the ALJ may reject a treating source opinion using only lay interpretation of medical evidence "does not reflect the agency's fair and considered judgment on the matter in question" and "appears [to be] nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack." *Christopher*, 132 S. Ct. at 2166-67 (internal citations omitted).

The Regulations do not abrogate *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler* and *Gober*. These decisions are binding on cases where the ALJ rejects a treating medical opinion using only lay interpretation of evidence, while *Jones*, *Plummer*, *Brown*, and *Chandler* are merely dicta. *See Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 355 (3d Cir. 2002) (Statements that are "not necessary to the actual holding of the case" are "dicta" and "not binding"); *Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338, 344 n. 9 (3d Cir.2000) ("Insofar as this determination was not necessary to either court's ultimate holding, however, it properly is classified as dictum. It therefore does not possess a binding effect on us pursuant to the 'law of the case' doctrine."); *Chowdury v. Reading Hosp. & Med. Ctr.,* 677 F.2d 317, 324 (3d Cir.1982) ("[D]ictum, unlike holding, does not have the strength of a decision 'forged from actual experience by the hammer and anvil of litigation,' a fact to be considered when assessing its utility in the context of an actual controversy. Similarly, appellate courts must be cautious to avoid promulgating unnecessarily broad rules of law.") (quotations omitted).

If precedential opinions directly address the issue presented here, the District Court must follow the precedential opinions. *See Government of the Virgin Islands v. Marsham*, 293 F.3d 114, 2002 WL 1204957, at *4 (3d Cir.2002) ("That statement, however, is dictum and is not binding on this, or any other, panel of this Court."); *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey*

*Welfare Fund v. Wettlin Associates, Inc.*, 237 F.3d 270, 275 (3d Cir. 2001) ("To the extent it applied dicta…the District Court erred); *Robinson v. Hollingsworth*, No. CIV. 13-0101 RBK, 2013 WL 4675501, at *3 (D.N.J. Aug. 29, 2013) (District Court was bound by precedent, and could not deviate from "precedential holding" based on dicta). Here, the ALJ rejected all of the medical opinions using only lay interpretation of medical evidence. Thus, the Court must follow *Frankenfield*, *Doak*, *Ferguson*, *Kent, Van Horn, Kelly, Rossi, Fowler* and *Gober.*

## B. Non-medical evidence

An ALJ is entitled, in "extremely rare" circumstances, to reject a treating opinion based on "non-medical" evidence, which does not require expert interpretation. Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936. However, the "non-medical" evidence must be truly "inconsistent" with the opinion. *Id.*; *see also Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005) (ALJ permissibly rejected treating opinion "in combination with other evidence of record including Claimant's own testimony"); *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) ("the ALJ's decision fails to explain how Chunn's activities and behaviors are inconsistent with Dr. Ziolkow's characterization of her mental capacity."); *Marr v. Colvin*, No. 1:13-cv-2499, *Report and Recommendation* at *44, 52 (M.D.P.A. April 15, 2015) (District Court adopted a recommendation from the undersigned that the claimant's appeal be

denied where physicians opined that the claimant could not sit for more than forty-five minutes total out of an eight-hour workday but the claimant testified that she was regularly able to sit for up to five hours at a time).

## C. Application

Here, the ALJ reinterpreted medical evidence to reject Dr. Stepczak's opinion, writing that "[t]here were no objective findings made by Dr. Stepczak during his one-time exam of the claimant that would support these limitations." (Tr. 26). The ALJ reinterpreted medical evidence to reject Dr. Dewitt's opinion, writing that "Dr. Dewitt's treatment notes contain little by way of any objective findings for the claimant…Dr. Stepczak's consultative disability evaluation also contains mostly benign objective findings for the claimant upon exam…there are no diagnostic studies that would support Dr. Dewitt's less-than-sedentary restrictions for the claimant; the most recent imaging of the claimant's lumbar spine has shown that his old 11 fracture is still in good alignment, and that he has dextroscoliosis with only mild degenerative changes." (Exhibit 13F) (Tr. 27).

Thus, the ALJ impermissibly reinterpreted medical evidence to supplant the opinion of a competent professional. *See Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler* and *Gober.* This was particularly improper here. The ALJ failed to mention that Dr. Dewitt treated Plaintiff with an escalating dose of narcotic medication. (Tr. 26, 267, 357, 360-62). Plaintiff exhibited degenerative

changes at the sacroiliac joint, which was not addressed by Plaintiff's surgery. (Tr. 251). Plaintiff exhibited at least some objective findings and abnormalities on diagnostic imaging. (Tr. 284-98, 356-63, 369-73); *cf.* 38 C.F.R. § 4.130 (1990) (In veteran's benefit cases, "examiner's classification of the disease as 'mild,' 'moderate,' or 'severe' is not determinative of the degree of disability."). The ALJ's error in relying on an alleged lack of support is compounded by the ALJ's failure to recontact Dr. Dewitt, particularly because each treatment record contains additional illegible markings. (Tr. 356-63); s*ee* also Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36934.

Here, Plaintiff's activities of daily living do not provide substantial evidence. The ALJ noted that:

> On December 13, 2011, the claimant reported that he has no problem attending to his own personal care; watches television; does some housework; goes for walks; prepares complete meals on a daily basis that require 30 minutes of preparation time per meal; cleans for two to three hours twice a week; sweeps; mops; does yard work once a week; does not need any help or encouragement to perform cleaning, sweeping, mopping, and yard work; goes outside on a daily basis to walk or drive; drives a car; is capable of traveling independently; shops in stores for one hour twice a week; and watches television, does crossword puzzles, and plays card games on a daily basis (Exhibit 4E).

> The claimant further reported on December 13, 2011 that he has the following limitations: it hurts for him to do any lifting of more than 10 to 15 pounds; he is unable to sit for more than one hour at a time; and bending and temperature extremes cause him to experience pain (Exhibit 4E).

(Tr. 26-27).

None of these activities indicate that claimant can work on a regular and continuing basis, eight-hours a day, five days a week. These activities are not "inconsistent" with the physicians' opinions. *See also Fargnoli v. Massanari*, 247 F.3d 34, 44 (3d Cir. 2001) ("Fargnoli's trip to Europe in 1988 cannot be the basis for a finding that he is capable of doing a light exertional job because sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity"); *Smith v. Califano*, 637 F.2d 968, 971-72 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity… It is well established that sporadic or transitory activity does not disprove disability.").[5]

The ALJ wrote that "[t]he claimant additionally acknowledged on December 13, 2011[,] that standing and walking are not affected by his medical condition, although he was unsure how far he could walk (Exhibit 4E)." (Tr. 26-27). If accurate, this would be inconsistent with the medical opinions. (Tr. 284-98, 369-73). However, the ALJ mischaracterizes the record.[6] By January of 2012, Plaintiff

---

[5] The ALJ also asserted that "there is nothing of record, however, to indicate that the claimant ever complained of having difficulty while sitting to any treating provider or evaluating sources." (Tr. 27). The ALJ overlooks the fact that both treating and evaluating sources noted limitations with sitting. (Tr. 284-98, 369-73).

[6] The ALJ also contradictorily claimed that Plaintiff "has a very poor work history does little to aid his credibility" and his "earnings record confirms his poor attachment to the labor market" while relying on Plaintiff's ability to work "at

reported needing a cane to ambulate at times. (Tr. 50-51, 53-54). He testified at the hearing that he could not stand for more than forty minutes at a time, could not walk for more than two blocks, and spends most of his day laying in bed "because it hurts to get up." (Tr. 50-51, 53-54). Consequently, this is not one of the "extremely rare" occurrences when the ALJ may reject a treating opinion based on activities of daily living. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936.

The ALJ fails to provide any other "good reason" to reject this opinion. 20 C.F.R. §404.1527(c)(2);  *see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (Although a Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," review must be based on "the administrative record [that was] already in existence" before the agency, not "some new record made initially in the reviewing court or post-hoc rationalizations made after the disputed action). Thus, the ALJ's rejection of the medical opinions and resulting RFC lacks substantial evidence.

The ALJ failed to elicit any vocational expert testimony on jobs in the national economy, so the Court cannot conclude that this error was harmless. (Tr.

---

heavy employment on a cash basis at a stone quarry and doing landscaping for many years subsequent to his 1987 spinal surgery" to find that he was less than fully credible. (Tr. 25-26).

36-60). The Court recommends remand for the ALJ to properly evaluate the medical opinions, Plaintiff's non-exertional impairments, and the existence of jobs in the national economy that an individual with Plaintiff's RFC can perform.

Because the Court recommends remand on these grounds, it declines to address Plaintiff's other allegations of error. A remand may produce different results on these claims, making discussion of them moot. *See LaSalle v. Comm'r of Soc. Sec.*, No. CIV.A. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

## VI.    Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.    The decision of the Commissioner of Social Security denying Plaintiff's benefits under the Act be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2.    The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: December 30, 2015                    s/Gerald B. Cohn
_____
                                       GERALD B. COHN
                             UNITED STATES MAGISTRATE JUDGE